IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEREMY F. AHLIJAH, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 20-63-CFC |
| ALEJANDRO MAYORKAS, et al., | : |
| Defendants. | : |

**MEMORANDUM ORDER**

**I.   INTRODUCTION**

On March 21, 2022, the Court granted Defendants' motion to dismiss three of the four claims in this immigration action. (D.I. 33, 34) Before the Court are Plaintiff's Rule 60(b) motion for relief from the Court's March 21, 2022 Order (D.I. 37), and Plaintiff's amended Rule 60(b) motion, (D.I. 40). The matters are fully briefed. (D.I. 38, 39, 41, 42)

**II.   BACKGROUND**

In January 2020, Plaintiff Jeremy F. Ahlijah, proceeding *pro se*, initiated this action by filing a four-count Complaint, bringing claims related to his immigration status. (D.I. 2) Plaintiff is a citizen of Cameroon. He arrived in the United States in 1981 on a B-2 tourism visa and obtained in 1984 an F-1 temporary nonimmigrant student visa that allowed him to attend school in the United States.

At the time he filed this action, Plaintiff was undergoing removal proceedings that had been initiated in 2013 by the Department of Homeland Security (DHS). On June 7, 2018, an Immigration Judge ordered Plaintiff removed to Cameroon. On June 29, 2018, Plaintiff appealed the Immigration Judge's removal order to the Board of Immigration Appeals (BIA). Plaintiff's BIA appeal was still pending when he filed this action.

As relevant, in Counts I and II of his Complaint, Plaintiff sought judicial review of previous adverse immigration decisions. In Count I, Plaintiff sought review of the 2002 denial by the United States Immigration and Naturalization Service (INS) of his request under 8 U.S.C. § 1255a to adjust his status to that of a lawful temporary resident. In Count II, he sought review of the 2009 denial by the United States Citizenship and Immigration Services (USCIS)[1] of his request under 8 U.S.C. § 1255 for adjustment of his residency status.

Defendants filed a motion to dismiss Counts I, II, and IV, arguing, as relevant, that this Court lacked jurisdiction over Counts I and II and that those claims were time-barred under the Administrative Procedures Act (APA). (D.I.

---

[1] In 2003, INS was dissolved and its relevant functions were transferred to the newly created USCIS. *See Pinho v. Gonzales*, 432 F.3d 193, 200 n.8 (3d Cir. 2005)

16 at 11-16) On March 21, 2021, this Court granted Defendants' motion and dismissed Counts I, II, and IV for lack of subject matter jurisdiction. (D.I. 33, 34) The Court acknowledged Defendants' timeliness arguments, but noted that they did not need to be addressed because the Court lacked jurisdiction over Counts I and II. (D.I. 33 at 13 n.12) Plaintiff filed a notice of appeal. (D.I. 35) On October 6, 2022, the United States Court of Appeals for the Third Circuit dismissed the appeal for lack of appellate jurisdiction, reasoning that this Court's March 21, 2021 Order was a nonfinal order because it had dismissed only three of Plaintiff's four claims. *See Ahlijah v. Wolf*, C.A. No. 22-1659 (3d Cir. Oct. 6, 2022).

On May 3, 2022, the BIA affirmed the Immigration Judge's order of removal, dismissed the appeal, and denied Plaintiff's motion to terminate the proceedings. (D.I. 37-9) The BIA, however, noted:

> [S]ubsequent to the Immigration Judge's decision and the filing of this appeal and motion, on April 15, 2022, the Secretary of DHS announced a new designation of Cameroon for Temporary Protected Status ("TPS") for 18 months. The respondent may be eligible to apply for TPS with USCIS. Under these circumstances and in an abundance of caution, we will remand the record to the Immigration Judge for further proceedings, including arguments by the parties regarding administrative closure.

3

(*Id.* at 10) The BIA then remanded the record "for further proceedings consistent with the foregoing opinion and for the entry of a new decision." (*Id.* at 11)

On November 18, 2022, Plaintiff filed in this Court a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from the March 21, 2021 Order as to Counts I and II based on the BIA decision. (D.I. 37) Plaintiff also requested that this Court direct entry of final judgment pursuant to Rule 54(b) as to Counts I, II, and IV so that he may pursue an appeal of the dismissal of those claims while Count III remains pending. Defendants opposed the Rule 60(b) motion, arguing that this Court still lacked jurisdiction, despite the BIA ruling. (D.I. 38) Defendants noted the BIA's observation that Plaintiff may be newly eligible for to apply for Temporary Protected Status with USCIS as a Cameroonian, and asserted that "Plaintiff's next hearing has been scheduled for June 25, 2024." (*Id.* at 6 n.5)[2] Finally, Defendants opposed Rule 54(b) certification on the grounds that it could cause the Third Circuit to have to hear and decide the case twice, and that the appeal could be mooted depending on what

---

[2] Defendants have not provided evidence that a hearing has been set, but Plaintiff acknowledges, without contesting, Defendants' assertion regarding the hearing date. (D.I. 39 at 24-25)

4

transpires in this Court with Count III and at Plaintiff's June 2024 immigration hearing.

On March 6, 2023, the Immigration Judge granted a motion Plaintiff filed to terminate his removal proceedings. (D.I. 40-1 at 2)[3] The Immigration Judge provided no reasoning for granting Plaintiff's motion to terminate removal proceedings, beside noting that DHS did not oppose motion, that a response to the

---

[3] The Executive Office for Immigration Review has provided the following explanation for termination of removal proceedings:

> Termination of proceedings dismisses the case related to a particular charging document. Sometimes the parties may agree to jointly terminate proceedings and must then present a joint motion to the immigration judge for review and decision. Additionally, if an immigration judge finds that a respondent is not removable as charged or that the respondent has established eligibility for citizenship, the immigration judge may terminate proceedings. It is important to note, however, that terminated cases do not exempt the respondent from future proceedings under a new charging document, and termination does not confer any status upon the respondent. While not a form of protection or relief from removal, an immigration judge's decision to terminate proceedings may enable a respondent to be granted voluntary departure by DHS or to pursue other relief claims.

Executive Office for Immigration Review: An Agency Guide, U.S. DOJ (2017), https://www.justice.gov/eoir/page/file/eoir_an_agency_guide/download (last visited July 12, 2023).

5

motion had not been filed, and that unspecified good cause had been established for the motion.[4]

On March 27, 2023, Plaintiff filed an amended Rule 60(b) motion, relying on the same arguments as his first motion, as well as the termination of the removal proceedings, to assert that this Court now has jurisdiction over Counts I and II. (D.I. 40) In response, Defendants maintain that this Court continues to lack jurisdiction over Counts I and II for the reasons previously held, and that, in any event, these claims are time-barred. (D.I. 41)

## III.  LEGAL STANDARD

### A.  Rule 54(b)

Rule 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment

---

[4] Plaintiff's motion to terminate the removal proceedings does not appear to have been included among the exhibits submitted by the parties to this Court.

> adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). In essence, "Rule 54(b) permits the district court to separate out final decisions from non-final decisions in multiple party and/or multiple claim litigation in order to allow immediate appeal." *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 162 (3d Cir. 2005).

A decision to certify a final decision for appeal under Rule 54(b) requires a court to make two findings: (1) that there has been a final judgment on the merits with respect to the claim at issue; and (2) that there is no just reason for delay. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980). One key question to be determined is whether the "appellate court would have to decide the same issues more than once if there were subsequent appeals" on the other issues/claims in the case. *Curtiss-Wright Corp.*, 446 U.S. at 6).

There are several factors district courts consider when evaluating a request to certify a judgment under Rule 54(b):

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obligated to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous

7

> factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Berckeley Inv. Grp., Ltd., v. Colkitt*, 455 F.3d 195, 203 (3rd Cir. 2006) (quoting *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)).

A district court must consider whether "the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants [and the Court] for an early and separate judgment as to some claims or parties." *British Telecommunications PLC v. IAC/InterActiceCorp*, 2019 WL 1765225 at *2 (D. Del. Apr. 22, 2019) (quotation omitted).

Rule 54(b) "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." *Elliott v. Archdiocese of New York*, 682 F.3d 213, 220 (3d Cir. 2012) (quoting *Allis-Chalmers Corp.*, 521 F.2d at 363). "Certification of a judgment as final under Rule 54(b) is the exception, not the rule, to the usual course of proceedings in a district court." *Id.*; *see also Panichella v. Pa. R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958) ("The power which . . . Rule [54(b)] confers upon the trial judge should be used only in the infrequent harsh case as an instrument for the improved administration of justice and the more

8

satisfactory disposition of litigation in the light of the public policy indicated by statute [28 U.S.C. § 1291] and rule."). The moving party bears the burden of seeking to "convince the district court that the case is the infrequent harsh case meriting a favorable exercise of discretion." *Allis-Chalmers Corp.*, 521 F.2d at 365 (internal citation omitted).

### B. Rule 60(b)

Rule 60(b) provides that a party may file a motion for relief from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence, that with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reserved or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

## IV. DISCUSSION

### A. Initial Motion

Plaintiff's initial Rule 60(b) motion will be denied as moot in light of his amended Rule 60(b) motion, which incorporates the same arguments.

9

### B. Rule 54(b)

The Court will deny Plaintiff's request to certify the March 21, 2022 Order dismissing Counts I, II, and IV as a final order pursuant to Rule 54(b). Many relevant factors and considerations warrant against Rule 54(b) certification in this case. The Court does not conclude that "the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket" by way of an interlocutory appeal now and a possible future appeal after a true final judgment "are outbalanced by pressing needs of the litigants [and the Court] for an early and separate judgment as to" Counts I and II. *See British Telecommunications*, 2019 WL 1765225 at *2. Furthermore, success on Count III, or in future agency proceedings, could moot the interlocutory appeal. For these reasons, Plaintiff has not met his burden of convincing the Court "that the case is the infrequent harsh case meriting a favorable exercise of discretion," in the form of a Rule 54(b) certification. *Allis-Chalmers Corp.*, 521 F.2d at 365.

### C. Rule 60(b)

Rule 60(b) is restricted to providing relief from "final" judgments, orders, or proceedings. *See State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 406 (3d Cir. 2016); Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character

10

of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."). Given that Count III survived the Court's March 21, 2022 Order, and that the Court will decline Plaintiff's request for certification under Rule 54(b), the March 21, 2022 order was not final and, therefore, Rule 60(b) is "not a proper avenue by which to challenge" the dismissal of Counts I and II. *State Nat'l Ins. Co.*, 824 F.3d at 406.

### D. The Court's Inherent Authority

The inapplicability of Rule 60(b) is not necessarily the end of the matter. "Apart from Rule 60(b), the District Court has the inherent power to reconsider prior interlocutory orders." *State Nat'l Ins. Co.*, 824 F.3d at 406; *cf. United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.").

In dismissing both Counts I and II for lack of jurisdiction, the Court explicitly included in its reasoning the fact that removal proceedings were ongoing. *See* D.I. 33 at 8-9 ("Indeed, Ahlijah cannot appeal from a final deportation order because he is still in removal proceedings and the BIA has not yet issued a final

order."), 10 ("Ahlijah, however, may seek agency review of this denial in his pending removal proceedings."). With this case proceeding forward on Count III, it would be an inefficient use of judicial resources to ignore the import, if any, of the BIA's decision and the Immigration Judge's termination of the removal proceedings on this Court's jurisdiction over Counts I and II. The Court, therefore, will exercise its discretion and consider the developments in the immigration proceedings. *See Bullock v. Bimbo Bakeries USA Inc.*, 414 F. App'x 470, 472 n.3 (3d Cir. 2011) ("'[F]ederal courts have long recognized that they have an obligation to look behind the label of a motion filed by a pro se [litigant] and determine whether the motion is, in effect, cognizable under a different remedial statutory framework'") (alterations original) (quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999)); *see also In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (noting that the manner in which a court disposes of cases on its docket is generally within its discretion).

As to Count I, which sought adjustment of status under 8 U.S.C. § 1255a, this Court still clearly lacks jurisdiction despite the agency-level developments. As set out by the statutory framework, judicial review of the denial of a status-adjustment request under § 1255a may only occur in conjunction with judicial review of a deportation order, *see* 8 U.S.C. § 1225a(f)(1), (f)(4)(A), and review of

12

a deportation order may only be sought in a federal court of appeals. *See* § 1252(a)(5), (b)(2); *see also Qureshi v. Admin. Appeals Off. (AAO) of USCIS*, 408 F. App'x 611, 614 (3d Cir. 2010). Plaintiff asserts that this Court has jurisdiction under the APA, which vests federal courts with jurisdiction over "final agency action[s] for which there is no adequate remedy in a court." 5 U.S.C. § 704. The Third Circuit, however, has squarely held that the "APA's general grant of jurisdiction is . . . inapplicable" in this situation, "[b]ecause . . . § 1255a(f) sets for the exclusive process for review of USCIS decisions on applications for adjustment of status" under § 1255a. *Qureshi*, 408 F. App'x at 615 n.2.

Turning to Count II, matters are slightly more complicated. Count II sought judicial review of the USCIS's 2009 denial of Plaintiff's request under § 1255 for adjustment of his residency status. Under current Third Circuit precedent, the fact that removal proceedings were pending at the time of this Court's March 21, 2022 Order was dispositive as to at least one aspect of the question of jurisdiction under § 704 of the APA. In *Pinho v. Gonzales*, the Third Circuit held that an agency decision denying a request under § 1255 for adjustment of his residency status is final under § 704, and thus confers jurisdiction for review on a district court, "where there are no deportation proceedings pending in which the decision might be reopened or challenged." 432 F.3d 193, 202 (3d Cir. 2005);

13

*see also Jie Fang v. Dir. U.S. ICE*, 935 F.3d 172, 180-84 (3d Cir. 2019) (explaining *Pinho*). Given that removal proceedings have been terminated, this Court *arguably* would have jurisdiction over Count II pursuant to *Pinho*.

Defendants assert that "the Supreme Court recently explained that 'no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] of this title.'" D.I. 41 at 4 (quoting *Patel v. Garland*, 142 S. Ct. 1614, 1621-23 (2022)). This characterization of *Patel*, however, is not entirely accurate. *Patel* involved a petition for review of a deportation order, filed in the Eleventh Circuit, which, in addition to seeking review of the removal order, sought review of an *immigration judge's denial* of a § 1225 status adjustment request. *Id.* at 1620. The *Patel* Court analyzed § 1252(a)(2)(B)(i), which strips courts of appeals reviewing removal petitions of jurisdiction to review "any judgment regarding the granting of relief" under § 1255, and resolved a circuit split by reading § 1252(a)(2)(B)(i) broadly, as stripping jurisdiction regardless of whether the judgment in question was discretionary or non-discretionary. *Id.* at 1621-26.

Both the petitioner and the Government suggested that the *Patel* Court's broad reading of § 1252(a)(2)(B)(i) "will have the unintended consequence of precluding all review of *USCIS denials* of discretionary relief," which "are made

14

outside of the removal context," but the Court stated that "[t]he reviewability of such decisions is not before us, and we do not decide it." *Id.* at 1626 (emphasis added).[5]  Furthermore, the *Patel* Court did not address the question of whether its broad reading of § 1252(a)(2)(B)(i) would bar district courts from exercising jurisdiction over § 1255 status-adjustment decisions under § 704 of the APA (in the manner that § 1255a(f) bars jurisdiction over § 1255a status-adjustment decisions, as discussed above).  In fact, the Court explicitly noted the absence of that issue in the case, stating in a footnote that "[t]he parties do not address the independent question whether a USCIS denial of adjustment of status made *before* the initiation of removal proceedings satisfies threshold finality and exhaustion requirements [under the APA] for review." *Patel*, 142 S. Ct. at 1626 n.3 (emphasis added).  The *Patel* Court observed that there is "disagreement on this question in the courts of appeals," and cited *Pinho*, among other cases. *Id.*

The decision in *Patel* could ultimately lead to the Third Circuit to reconsider *Pinho*. *See, e.g.*, *Abuzeid v. Mayorkas*, 62 F.4th 578 (D.C. Cir. 2023) (holding, in light of *Patel*, that jurisdiction under the APA does not extend to USCIS denials of

---

[5] Without deciding the issue, the *Patel* Court observed that "it is possible that Congress did, in fact, intend to close that door," and provided support for the observation.  *See Patel*, 142 S. Ct. at 1626-27 (footnote omitted).

§ 1255 status adjustment requests); *Britkovyy v. Mayorkas*, 60 F.4th 1024 (7th Cir. 2023) (same). For now, however, *Pinho* remains binding authority in the Third Circuit. *See, e.g.*, *Elldakli v. Garland*, 64 F.4th 666, 673 (5th Cir. 2023) (Higginbotham, J., concurring) (noting that "at least four of our sister circuits have determined that USCIS's decision [regarding a status adjustment request under § 1255] is preliminary—meaning not final—only when removal proceedings are pending," and citing *Pinho*, among other cases).

This, however, is not the end of the matter. Even assuming, *arguendo*, that, as a result of the termination of the removal proceedings, this Court now would have jurisdiction over Count II, pursuant to *Pinho*, the Court would still lack jurisdiction for an independent reason. As argued by Defendants in their motion to dismiss, and reasserted in response to Plaintiff's amended Rule 60(b) motion, this claim is time-barred.

Subject to an exception which is inapplicable here, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). "It is well established that the six-year statute of limitations applies to claims brought pursuant to the APA." *Paucar v. Att'y Gen.*, 545 F. App'x 121, 124 (3d Cir. 2013) (citation omitted). The Third Circuit has held that the six-year statute of

limitations set forth in § 2401(a) is jurisdictional. *See United States v. Sams*, 521 F.2d 421, 428 (3d Cir. 1975) ("The protection afforded by section 2401(a) may not be waived by the United States, and where it appears to the court that the time for bringing the action has run, the action must be dismissed."); *see also Battle v. Sec'y U.S. Dep't of Navy*, 757 F. App'x 172, 174 n.2 (3d Cir. 2018) (noting that the district court "properly treated" a motion to dismiss based on § 2401(a) as a motion to dismiss for lack of subject matter jurisdiction, pursuant to *Sams*).

In 2009, the USCIS denied Plaintiff's request under § 1255 for adjustment of his residency status. The 2020 Complaint in this case was filed well after the expiration of the six-year statute of limitations set forth in § 2401(a). Therefore, even if the termination of the removal proceedings would have otherwise vested this Court with jurisdiction over Count II, § 2401(a)'s time bar would still strip this Court of jurisdiction.[6]

---

[6] Plaintiff argues unconvincingly that Defendants, by failing to raise the statute of limitations under § 2401(a) as to different claims brought in a different lawsuit in a different federal district court, waived the defense here. This argument fails both because it is a misapprehension of the waiver doctrine, and for the more fundamental reason that, as discussed, the Third Circuit has held § 2401(a) is jurisdictional and cannot be waived. *See Sams*, 521 F.2d at 428.

## V.   CONCLUSION

NOW THEREFORE, at Wilmington on this Seventeenth day of July in 2023, having considered Plaintiff's Rule 60(b) motion (D.I. 37) and amended Rule 60(b) motion (D.I. 40), and for the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Rule 60(b) motion (D.I. 37) and amended Rule 60(b) motion (D.I. 40) are **DENIED**.

_____
Chief Judge